# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

**CIVIL ACTION NO. 10-33-DLB**

**TONYA SIMS, next friend of K.S., a minor, ET AL.**          **PLAINTIFFS**


**vs.**          **MEMORANDUM OPINION AND ORDER**


**BRACKEN COUNTY SCHOOL DISTRICT, ET AL.**          **DEFENDANTS**

\* \* \* \* \* \* \*

Plaintiffs Tonya Sims, mother of minor child K.S., and Mercadez Sims,[1] commenced this § 1983 action against Bracken County School District,[2] the superintendent of Bracken County Schools Tony Johnson, and the principal and vice principal of Bracken County High School, Jenny Ray and Clay King respectively, alleging violations of K.S. and Mercadez's Fourth Amendment rights after the two had their belongings repeatedly searched for drugs and were allegedly subject to "outright harassment...without cause" by school officials during school or school-related activities.  (Doc. # 1, ¶ 43).  Plaintiffs also advance several tort claims arising under state law, including negligence and intentional infliction of emotional distress.

The matter is before the Court on Defendants Bracken County Board of Education, Tony Johnson, Jenny Ray, and Clay King's Motion to Dismiss  (Doc. # 2).  Defendants

---

[1]Mercadez Sims was a minor when the alleged conduct occurred. However, she reached the age of majority before this lawsuit was filed.  By agreement of the parties, Mercadez Sims, having reached majority, will be substituted for M.S. as plaintiff of record and will hereinafter be referred to by her full name.

[2]There is no legal entity known as "Bracken County School District"; rather the proper legal entity responsible for the operation of Bracken County Schools is the Bracken County Board of Education. Accordingly, the remainder of this memorandum opinion and order will refer to Defendant Bracken County Board of Education or, more simply, the Board.

moved for dismissal of all claims for failure to state a claim and on the basis of qualified immunity. Oral argument was held on October 7, 2010. Charles Lester appeared on behalf of the Plaintiffs, and Suzanne Cassidy and Eric Rottinghaus appeared on behalf of the Defendants. The matter is now ripe for review. For the reasons set forth below because Defendants Ray and King are entitled to qualified immunity for the claims asserted against them in their individual capacities, and because Plaintiffs failed to state a claim against the school board for municipal liability and against Defendant Johnson for supervisory liability, Defendants' motion to dismiss (Doc. # 2) is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts, which have been gleaned solely from Plaintiffs' Complaint, are accepted as true for purposes of addressing Defendants' motion to dismiss. *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005). This lawsuit was brought by Plaintiffs Tonya Sims, on behalf of her minor child K.S., and Mercadez Sims who, at the time the Complaint was filed, had reached the age of majority. Mercadez and K.S., formerly students at Bracken County High School ("BCHS"), allege they were subject to unlawful searches and seizures as well as outright harassment by school officials during school hours or during school-related activities. Their allegations arise from a series of randomized narcotics patrols conducted by the Kentucky State Police ("KSP") at BCHS' request over the course of two years and from BCHS' subsequent discipline of Mercadez and K.S.

In December 2007, BCHS announced it would periodically patrol school grounds for contraband through the use of KSP's narcotics-trained canines. This process required BCHS teachers to lockdown their classrooms and await the arrival of KSP officers who

2

would patrol classrooms at random.  Before commencing these patrols, students were instructed to empty their pockets and leave any sweatshirts or jackets in their classroom. Students were then led to a nearby classroom while KSP ushered its trained dogs throughout the classroom in pursuit of contraband.  Items were only searched if a KSP dog returned a positive alert on the property or specific item.

### Plaintiff Mercadez Sims

On or about December 7, 2007, KSP's drug-sniffing canine returned a positive alert on a student's jacket.  Principal Ray asked who the jacket belonged to, and Mercadez claimed ownership.  She was then escorted from her classroom to Principal Ray's office in front of all her peers; an event that allegedly caused her "great humiliation."  (Doc. # 1, ¶ 15).  The jacket did not contain drugs, but did smell of marijuana.  The pockets revealed a lighter, allergy eye drops, and $47.00.  Defendants interrogated Mercadez about the jacket, which she explained belonged to a friend.  Principal Ray called Plaintiff Tonya Sims to corroborate Mercadez's statements, which she did.  Mercadez claims that after this incident, students at BCHS began to solicit drugs from her on account of wide-spread rumors that she was caught with a large quantity of drugs; a rumor that "horrified" her. (Doc. # 1, ¶ 18).  Mercadez alleges that her classroom was the target of every KSP drug search conducted at BCHS from December 2007 through October 15, 2009; this, she claims, constitutes a continued practice of harassment by Defendants, which has caused her severe emotional distress.

On May 13, 2008, Mercadez was escorted to the principal's office and questioned about "unsubstantiated" reports that she was smoking marijuana on a school field trip to Louisville, Kentucky.  (Doc. # 1, ¶ 19).  According to Principal Ray, she received a call from

the Executive West Hotel that someone in Mercadez's room was smoking marijuana. Mercadez's father called the hotel to confirm and was told that no one from the hotel contacted BCHS to report marijuana use, but that Mercadez had contacted the front desk to report a defective smoke detector. Plaintiff Tonya Sims contacted Defendant Johnson after the May 13, 2008 incident to request that school officials refrain from interrogating Mercadez without first notifying her. A teleconference between Mercadez, her father, and Defendants Ray and King was held on May 15, 2008, during which Mercadez alleges she was badgered by Defendants who threatened that if she was not truthful "this would become a disciplinary problem."[3] (Doc. # 1, ¶ 24). On May 16, 2008, Defendants Ray and King met with Plaintiff Tonya Sims and explained that Mercadez had boys in her hotel room in violation of school policy and was therefore given a one-day in-school suspension and stripped of her officer position with the Future Business Leaders of America ("FBLA"). She was further prohibited from attending overnight trips with the FBLA. Mercadez alleges that she was specifically targeted for punishment, while other students who committed the same offense were not. Mr. and Mrs. Sims met with Defendant Johnson on May 16, 2008, who indicated at the time that he approved of Defendants' handling of Mercadez's situation.

**Plaintiff K.S.**

KSP conducted another drug patrol on November 25, 2008, and this time the drug-sniffing canines returned a positive hit on K.S.' locker. In it, Defendants found an empty plastic bag that smelled of marijuana, which K.S.' girlfriend claimed to own. Defendants then searched K.S. and seized cigarette rolling paper found on his person. He was placed

---

[3]The Complaint fails to indicate the purpose of the teleconference (i.e. *what* exactly would become a disciplinary problem). It can only be assumed that the conference was conducted to discuss the alleged report of marijuana use during a school-sponsored field trip.

on a five-day out-of-school suspension and thereafter spent nine weeks in an alternative school. In support of her allegation that Defendants have forced K.S. to bear unlawful harassment, Plaintiff Tonya Sims asserts that the regulation disciplinary action for a typical tobacco violation is a three-day suspension. After this incident, Plaintiff Sims sent a certified letter to BCHS instructing the school not to interrogate either of her children under any circumstance.

KSP conducted another drug patrol on October 15, 2009. Both Mercadez and K.S.' classrooms were searched. As alleged, Principal Ray pulled K.S. from his classroom and asked whether he had any drugs in his car, which he denied. Defendant Ray then escorted K.S. to his car where a KSP officer awaited and asked him again whether he had any drugs in the car. K.S. again denied having any drugs in his car. The KSP officer proceeded to search K.S.' car, which uncovered a chewed straw suspected to be drug paraphernalia. After finding the straw, the officer and Defendant Ray thoroughly searched the rest of K.S.' car, including his trunk, but found nothing. At this point, Defendant Ray refused to allow K.S. to board his vocational bus and instead detained K.S. for questioning.

The next morning when Defendant Ray and Plaintiff Tonya Sims discussed the incident, Principal Ray told her the drug-sniffing canine returned a positive hit on K.S.' car. Plaintiff Sims denied the allegation stating that K.S. was grounded from driving his car for three weeks prior to the search of the car and a positive alert on the car would be impossible. K.S., however, confessed that marijuana had been smoked in his car a week prior by someone other than himself. For this infraction, K.S. was initially suspended for five days; a punishment that was later extended to ten days. In late October, Plaintiff Tonya Sims received a letter from the Board's legal representative, indicating that he

advised the school board to delay K.S.' expulsion until the return of the state crime lab test results of the interior of K.S.' car. Allegedly, the letter also stated that Defendants found marijuana residue in K.S.' car during the KSP search. Plaintiff Tonya Sims withdrew K.S. from BCHS on October 27, 2009, after receipt of this letter, and began home-schooling him. She claims K.S. suffered severe emotional distress as a result of Defendants' actions.

In essence, Plaintiffs believe these repeated BCHS-sponsored patrols and subsequent suspensions, as well as other forms of discipline, violated their constitutional rights. Morever, Plaintiffs claim that Johnson, Ray, and King were negligent in failing to prevent foreseeable harm to Mercadez and K.S., and that the repeated patrols and subsequent discipline caused them both severe emotional distress. Accordingly, against Defendant Bracken County Board of Education, Plaintiffs assert a § 1983 claim for unlawful policy or custom premised on a theory that BCHS conducted its searches and seizures in a stigmatizing manner that unlawfully targeted K.S. and Mercadez. Against Defendants Johnson, Ray, and King, Plaintiffs assert the following: (1) a § 1983 claim for unlawful search and seizure in violation of the Fourth Amendment;[4] (2) a supplemental state law tort claim for negligence; and (3) a supplemental state law claim for intentional infliction of

---

[4]Plaintiffs fail to specify in their Complaint whether Defendants Johnson, Ray, and King are being sued in their individual or official capacities. The Sixth Circuit requires § 1983 plaintiffs to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply their capacity as state officials." *Shepherd v. Wellman*, 313 F.3d 963, 967 (6th Cir. 2002) (quoting *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)). However, where the pleadings are ambiguous the Court uses the "course of proceedings" test to determine whether the § 1983 defendants received notice of plaintiff's intent to hold them liable in their individual capacities. *Shepherd*, 313 F.3d at 967-68. In *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001), the court concluded that even where § 1983 defendants fail to receive sufficient notice in the complaint that suit was filed against them in their individual capacities, a response to defendants' motion to dismiss may clarify the ambiguity.

Here, Plaintiffs make clear in their Response to Defendants' motion to dismiss that they are suing Defendants Johnson, Ray, and King in their individual capacities. (Doc. # 5, at 10) (Plaintiffs' "claim that Defendants Johnson, Ray, and King in their individual capacities are liable under 42 U.S.C. § 1983 is sufficiently supported by factual allegations."). Accordingly, the Court construes Plaintiffs' claims against Defendants Johnson, Ray, and King as claims against each in his or her individual capacity.

emotional distress.  For the reasons that follow, all claims will be dismissed in their entirety.

## II.    ANALYSIS

### A.    Motion to Dismiss

#### 1.    Standard of Review

At the motion to dismiss stage, the Court's job is to test the sufficiency of the complaint.  Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, and accept all of [his] factual allegations as true.  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor."  *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted).  The Court, however, is not bound to accept as true unwarranted factual inferences, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts.  *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir. 1990).

To survive a motion to dismiss, the complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but it must present "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  To satisfy this standard, the complaint must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Id.* at 555.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  Essentially, the pleading standard Rule 8

announces does not require exhaustive factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## B. Plaintiffs' § 1983 Claims

Section 1983 specifically authorizes "any citizen of the United States or other person within the jurisdiction thereof" to pursue "an action at law [or] suit in equity" against every person who under color of state law "causes...the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983; *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

### 1. Plaintiffs' § 1983 Claim Against Defendants Johnson, Ray, and King

Against Defendants Johnson, Ray, and King in their individual capacities, Plaintiffs assert Fourth Amendment violations of unlawful search and seizure. In response, Defendants claim they are entitled to qualified immunity. In the context of a § 1983 action, qualified immunity shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is granted broadly and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is not a mere defense to liability; where it is applicable, its purpose is to shield the official from suit altogether, saving the official from the burdens of discovery and the costs of trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the Court takes seriously its evaluation of whether particular defendants are entitled to qualified immunity as it is "intended to serve the public

interest by permitting officials to take action with independence and without fear of consequences." *Crockett v. Cumberland College*, 316 F.3d 571, 579 (6th Cir. 2003) (internal quotations omitted). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery." *Mitchell*, 472 U.S. at 526.

The Court begins its qualified immunity analysis with Defendant Jenny Ray, who was present and participated in the alleged unlawful searches and seizures. The Court will then address Defendant King's entitlement to qualified immunity. From the facts alleged in the Complaint, Defendant Johnson was not present during the alleged searches and seizures; thus, Plaintiffs' claims against him must be evaluated pursuant to the § 1983 standard for supervisory liability.

### a. Defendant Jenny Ray

The Court generally follows a two-step analysis when evaluating whether a public official is entitled to qualified immunity. *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009).[5] First, the Court will inquire whether, taken in a light most favorable to the party asserting injury, plaintiff's allegations establish a constitutional violation. Second, assuming this threshold inquiry is satisfied, the Court assesses whether that right was clearly established at the time of the alleged violation and whether the right

---

[5]The Sixth Circuit has used both a two-step and three-step analysis when evaluating qualified immunity claims. *See Beard* v. *Whitmore Lake Sch. Dist.*, 402 F.3d 598, 603 (6th Cir. 2005) (court used a three-part test to determine whether the grant of qualified immunity was proper. The third step requires the court to "determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900-01 (6th Cir. 2004)); *Causey v. City of Bay City*, 442 F.3d 524, 528 n.2 (6th Cir. 2006) (court used only a two-step analysis as set forth in *Saucier v. Katz*, 553 U.S. 194 (2001)). "[B]oth the two-step approach and the three-step approach can be said to capture the holding of *Saucier v. Katz*," therefore, the court finds the two-step inquiry appropriate to resolve the qualified immunity issues presented here. *Id.*

was so clearly established that a reasonable official would understand the particular conduct at issue violated that right. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004).

Notably, the sequence of this two-step protocol is no longer mandatory. *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 822 (2009) (courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first" in a given case). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier*, 533 U.S. at 201). Despite the non-mandatory nature of the qualified immunity inquiry, the Court will adhere to step one and step two sequentially.

The Court's initial task then is to determine whether the search and seizure allegations contained in Plaintiffs' Complaint rise to the level of a constitutional violation. The Complaint details four searches and three seizures, all of which the Court must evaluate for any constitutional infirmity: (1) on December 7, 2007, a trained narcotics dog returned a positive alert on Mercadez's jacket, which was subsequently searched; (2) K.S.' locker was searched on November 25, 2008, after a trained narcotics dog returned a positive alert; (3) on that same date, K.S.' person was searched once school officials uncovered an empty plastic bag smelling of marijuana from K.S.' locker; and (4) on October 15, 2009, K.S.' car was searched in the school parking lot after a drug-dog returned a positive alert on the car.

Two of the three seizures alleged occurred in conjunction with these school-initiated searches: (1) on December 7, 2007, after the KSP narcotics-canine returned a positive alert on Mercadez's jacket, Principal Ray escorted Mercadez to her office for further

questioning; and (2) on October 15, 2009, Principal Ray detained K.S. for questioning after a search of his car uncovered a "chewed-on straw," which Ray and the KSP officer characterized as "drug paraphernalia."  (Doc. # 1, ¶ 33).  The third seizure occurred on May 13, 2008.  Mercadez was detained in Defendant Ray's office following an alleged call from the Executive West Hotel that someone had been smoking marijuana in her hotel room on a school field trip to Louisville, Kentucky.

## I.   Searches

A school official searching a student is "entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment."  *Pearson*, 129 S. Ct. at 822.  The Fourth Amendment protects the right of individuals to be free from unreasonable searches and improper detention.  U.S. Const. amend. IV ("[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...").  However, students typically have a "lesser expectation of privacy than members of the public generally."  *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 348 (1985)).  While students' constitutional rights do not evaporate at the public school's doors, the essence of those rights is balanced against the need for teachers and administrators to have the freedom to maintain order in schools.  *Tinker v.  Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).  Thus, in *New Jersey v. T.L.O.*, the Supreme Court held that the Fourth Amendment applies to searches conducted by school officials, but "rejected strict adherence to a probable cause requirement."  *Beard*, 402 F.3d at 603 (summarizing the

*New Jersey v. T.L.O.* holding).   The constitutionality of a school search is instead determined by its reasonableness in light of the circumstances.[6]  *T.L.O*, 469 U.S. at 341.

The Court must consider the following constitutional prerequisites to determine the reasonableness of a school search: (1) whether the state action was justified at its inception; and (2) whether the search as conducted was reasonably related in scope to the circumstances which justified the search in the first place.  *Id.*  A search by a school official will generally be justified at its inception when there are reasonable grounds for suspecting that the search will produce evidence that the student has violated or is violating either the law or school rules, or is in imminent danger of injury on school premises.  *Id.* at 341-42; *Brannum v. Overton County Sch. Bd.*, 516 F.3d 489, 495-96 (6th Cir. 2008).  A search is usually "permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction."  *T.L.O.*, 469 U.S. at 342.

---

[6]It is important to note that the Supreme Court in *New Jersey v. T.L.O.* considered only the narrow issue of the appropriate standard to be applied to searches carried out by school officials in the school setting. *T.L.O.* did not address the "appropriate standard for assessing the legality of school searches conducted by school officials in conjunction with or at the behest of law enforcement agencies."  469 U.S. at 342, n.7.

Similarly, the Sixth Circuit has not yet addressed the applicable standard the court should use in assessing a school-initiated search incidentally carried out by law enforcement personnel.  Courts have generally held, however, that *T.L.O.'s* reasonable suspicion standard applies to searches conducted by law enforcement at the behest of school officials.  *See Shade v. City of Farmington*, 309 F.3d 1054, 1060 (8th Cir. 2002) (search constitutional where school officials, not law enforcement officers, initiated the investigation and the search); *State v. N.G.B.*, 806 So. 2d 567, 568-69 (Fla. Dist. Ct. App. 2002) (reasonable suspicion was the appropriate standard where search of student by police officer was initiated and directed by school official); *In re Josue T.*, 989 P.2d 431, 437 (1999) (reasonable suspicion applies where police officer "merely assisted the school official, during the school day, at the school official's request, to protect student welfare and the education milieu.").

Because the searches carried out in this case were initiated for the purpose of furthering the school's objectives in creating a safe environment for learning, rather than for investigatory purposes at the behest of law enforcement officers, the Court finds it most appropriate to apply the reasonable suspicion standard in this case.

Here, the reasonableness of Defendant Ray's December 7, 2007 search of Mercadez's jacket is clear. The search was initiated by school officials attempting to enforce a drug-free learning environment. To achieve this goal, BCHS used the Kentucky State Police and its narcotics-trained canines. After a KSP dog returned a positive alert on Mercadez's jacket, it was reasonable for Defendant Ray to suspect the jacket contained contraband in violation of school policy as well as the law. *See Hearn v. Bd. of Public Educ.*, 191 F.3d 1329, 1333 (11th Cir. 1999) ("[T]he alerting of a drug-sniffing dog to a person's property supplies not only reasonable suspicion, but also probable cause to search that property.").

A positive reaction from a narcotics-trained dog justifies a search in the school setting when it gives rise to reasonable suspicion that the search will produce contraband. *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 482 (5th Cir. 1982). Reasonable suspicion demands a less exacting standard of constitutional scrutiny than does probable cause. Given that Mercadez's jacket smelled of marijuana, Defendant Ray had reasonable grounds for suspecting that the jacket contained illegal drugs and that a subsequent search of the jacket would unearth contraband. Thus, Defendant Ray's actions were certainly justified at their inception. The scope of Defendant Ray's search was also permissible. After returning a positive drug alert, Defendant Ray searched the pockets of the jacket. When a search of the item failed to uncover any illegal drugs or prohibited items, school officials stopped searching. Accordingly, Plaintiffs' allegations concerning Defendant Ray's search does not establish a constitutional violation, and Defendant Ray is entitled to qualified immunity relative to her search of the jacket.

The November 25, 2008 search of K.S.' locker also passes constitutional muster for the same reason Defendant Ray's search of the jacket does: the positive alert from a narcotics-trained canine supplied reasonable suspicion for school officials to search K.S.' locker. The search failed to produce any illegal drugs, but did unearth an empty plastic bag that smelled of marijuana for which K.S.' girlfriend claimed ownership. At its inception, the search was justified in light of the school's objectives to maintain a safe and drug-free learning environment for students. The scope of the search, moreover, was permissible. The locker itself was searched after the KSP dog returned a positive indication for a controlled substance. Plaintiffs failed to adequately allege a constitutional violation stemming from the search of K.S.' locker, and Defendant Ray is also entitled to qualified immunity for that search.

The third search was of K.S.' person, which occurred immediately after Defendant Ray found drug paraphernalia in his locker. A KSP officer performed the search. The Fourth Amendment "applies with its fullest vigor against any intrusion on the human body." *Horton*, 690 F.2d at 478. The reasonableness of the search is related, in part, to the severity of the intrusion into the individual's privacy interests. *T.L.O.*, 469 U.S. at 341-42; *Camara v. Mun. Court*, 387 U.S. 523, 537 (1967) (reasonableness determined by "balancing the need to search against the invasion which the search entails."). In other words, "as the intrusiveness of the search of a student intensifies, so too does the standard of Fourth Amendment reasonableness." *Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1321 (7th Cir. 1993). Individualized suspicion is not always necessary to search a student in the school setting; however, the more intrusive the search becomes the

more individualized suspicion becomes a constitutional prerequisite. *Vernonia*, 515 U.S. at 653.

From what can be gleaned from the Complaint, K.S. was required to empty his pockets after a plastic bag smelling of marijuana was found in his locker. This search focused precisely on determining whether K.S. was in possession of illegal drugs, and further, was reasonably related to the school's interest in maintaining a drug-free learning environment. *See Beard*, 402 F.3d at 605 ("[A] search undertaken to find money serves a less weighty governmental interest than a search undertaken for items that pose a threat to the health or safety of students, such as drugs or weapons."). The search, therefore, was no more invasive than necessary to accomplish its purpose in determining whether K.S. was concealing drugs. KSP and Defendant Ray did not strip search K.S., nor did they otherwise unreasonably intrude on his person. *Safford United Sch. Dist. No. 1 v. Redding*, --- U.S. ---, 129 S. Ct. 2633, 2641 (2009) (assistant principal had reasonable suspicion that middle school student was distributing contraband drugs, justifying search of the student's backpack and outer clothing).

After the positive alert from the KSP narcotics dog and the drug paraphernalia was found in K.S.' locker, school officials had reasonable suspicion that a search of K.S.' person would uncover evidence of contraband drugs. That K.S.' girlfriend claimed ownership of the plastic bag is immaterial; it was reasonable for school officials to assume the plastic bag was K.S.' and that his girlfriend was merely covering for him or that the two used drugs together and he was keeping drug paraphernalia in his locker for her. *Tarter v. Raybuck*, 742 F.2d 977, 983 (6th Cir. 1984) (court held that school officials made reasonable search of student's person where they had observed activity they reasonably believed to indicate

the use and sale of marijuana). Accordingly, Defendant Ray is entitled to qualified immunity for authorizing the search of K.S.' person.

The search of K.S.' parked car located in the BCHS parking lot on October 15, 2009–like all prior searches at BCHS involving positive alerts from drug-sniffing canines–passes constitutional muster. The Complaint alleges that Defendant Ray pulled K.S. from class and asked him whether he had drugs in his car, which he denied. Defendant Ray then escorted K.S. to his car in the school parking lot where a KSP officer was waiting. The KSP officer asked if the car contained narcotics, and K.S. denied the allegation for a second time. Defendant Ray and the KSP officer, however, proceeded to search K.S.' car after a drug-sniffing canine returned a positive alert on the car. (Doc. # 1, ¶ 35). The search unearthed a chewed-on straw, which Defendant Ray characterized as drug paraphernalia, prompting a more thorough search of the vehicle that included its trunk and the inside of the car's stereo speakers.

The Sixth Circuit has held that law enforcement officials may sweep a public parking lot with drug dogs without implicating the Fourth Amendment. *United States v. Diaz*, 25 F.3d 392, 396 (6th Cir. 1994). A student, moreover, does not have a reasonable expectation of privacy in a school parking lot where he parks his car. *Hill v. Sharber*, 544 F. Supp. 2d 670, 679 (M.D. Tenn. 2008). Thus, a sweep of a school parking lot with drug sniffing dogs is not a search within the ambit of the Fourth Amendment. *Id.* This Court must determine, however, whether Defendant Ray and the KSP officer validly searched K.S.' car after receiving the positive alert from KSP's narcotics-trained canine.

At oral argument, counsel for Plaintiffs argued that the probable cause standard applies to any search conducted beyond the school's walls. In other words, a search of

property in a school parking lot requires more than reasonable suspicion.  Counsel argued further that because KSP and Defendant Ray did not have a warrant to search K.S.' car, the search contravened the Fourth Amendment.  This argument lacks merit.

Plaintiffs' argument fails for two reasons: (1) a search in a school parking lot need only satisfy the reasonable suspicion standard when conducted at the behest of school officials; and (2) the positive alert from a drug-sniffing dog establishes not only reasonable suspicion, but probable cause.  First, although not addressed specifically by the Sixth Circuit, courts apply the reasonable suspicion standard to searches that occur in a school parking lot when conducted at the behest of school officials.  *Rudolph v. Lowndes County Bd. of Educ.*, 242 F. Supp. 2d 1107, 1113 (M.D. Ala. 2003) (reasonableness standard applies to strip search of student and his car in school parking lot where search was conducted at the behest of school officials); *Anders v. Fort Wayne Cmty. Schs.*, 124 F. Supp. 2d 618, 624 (N.D. Ind. 2000) (court applied reasonable suspicion standard to a search of a student's car in the school's parking lot); *In re P.E.A.*, 754 P.2d 382 (Colo. 1988) (court upheld a search for marijuana in a student's trunk, reversing the trial court's determination that the probable cause standard applied).

Second, even if probable cause is the appropriate standard when school officials conduct searches outside the school building, Defendant Ray had probable cause to search K.S.' car.  The Sixth Circuit has made clear that a positive alert from a narcotics-trained canine is sufficient to establish probable cause.  *U.S. v. Diaz*, 25 F.3d 392, 393-94 ("A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance."); *Hearn*, 191 F.3d at 1332, 33 ("[T]he alerting of a drug-sniffing dog to a person's property supplies not only reasonable suspicion, but also

probable cause to search that property."). Accordingly, Defendant Ray's search of K.S.'
car was constitutionally valid such that she is entitled to qualified immunity relative to the
search of K.S.' car.

### ii.    Seizures

A person is seized pursuant to the Fourth Amendment when "...by means of physical
force or a show of authority, his [or her] freedom of movement is restrained." *U.S. v.
Mendenhall*, 446 U.S. 544, 553 (1980). Although the Supreme Court's decision in *T.L.O.*
dealt only with searches by school officials, circuits have relied on it to determine that
seizures within the public school context also fall within the ambit of the Fourth
Amendment. *Jones v. Hunt*, 410 F.3d 1221, 1228 (10th Cir. 2005); *Edwards v. Rees*, 883
F.2d 882, 884 (10th Cir.1989). To determine the constitutionality of a seizure (i.e., the
reasonableness of a student's detention), courts will look to the school official's actions
balanced against the special needs dictated in the public school setting where "the State
is responsible for maintaining discipline, health, and safety." *Bd. of Educ. of Indep. Sch.
Dist. No. 92 of Pottawatomie County v. Earls*, 536 U.S. 822, 830 (2002). "[A] school official
may detain a student if there is a reasonable basis for believing that the pupil has violated
the law or a school rule." *S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 641 (6th Cir.
2008) (quoting *Wofford v. Evans*, 390 F.3d 318, 326 (4th Cir. 2004)). The detention,
however, must be reasonably related in scope to the circumstances that justified it in the
first instance.

Mercadez was escorted to Defendant Ray's office after her jacket was positively
identified for possible presence of a narcotic odor. The Complaint alleges that she was
"interrogated" about why her jacket smelled of marijuana. (Doc. # 1, ¶ 16). After a brief

discussion of why her jacket smelled like marijuana and contained a lighter, eye drops, and $47.00, Defendant Ray called Mercadez's mother to discuss the incident. The Complaint fails to state how long the detention lasted, but given the events that occurred during the detention, the Court concludes that Defendant Ray reasonably detained Mercadez in connection with possible drug use on school property. Once Mercadez's mother confirmed that the jacket searched belonged to a friend, the alleged detention ended. Nothing alleged in the Complaint suggests that Mercadez's detention was unreasonable or in contravention of her constitutional rights. Accordingly, Defendant Ray is entitled to qualified immunity relative to Mercadez's detention and subsequent questioning after the KSP narcotics dog returned a positive hit on a jacket for which Mercadez claimed ownership.

Defendant Ray is also entitled to qualified immunity for the seizure that occurred on May 13, 2008, after it was reported that someone was smoking marijuana in Mercadez's hotel room during a school field trip. A report from the Executive West Hotel in Louisville that marijuana was being smoked in Mercadez's room is sufficient to create reasonable suspicion. Subsequent detention of a student for questioning is reasonable in light of the circumstances (i.e., that illegal drugs were being used during a school sponsored trip). That the Complaint alleges this report was never confirmed by someone at the Executive West Hotel does not dispel reasonable suspicion. In other words, that a random employee at the Executive West Hotel was not aware that BCHS had been called does not warrant the Court's denial of qualified immunity in an instance where Defendant Ray had reasonable suspicion to question Mercadez regarding the alleged report she received. As such, Defendant Ray is qualifiedly immune from suit on the alleged unconstitutional seizure of Mercadez on May 13, 2008.

The facts relative to K.S.' detention are equally scant. K.S.' detention occurred after Defendant Ray and a KSP officer searched his car and found a "chewed-on straw," which the two characterized as drug paraphernalia. As a result, K.S. was escorted to Defendant Ray's office, questioned, and was disallowed from boarding his vocational bus. The detention was justified at its inception given the constitutionality of the search of K.S.' car in the first instance. Accordingly, Defendant Ray is also entitled to qualified immunity relative to this seizure.

### b.     Defendant Clay King

Defendant Clay King must also be dismissed from this suit. The allegations concerning assistant principal King are scant and arguably have nothing to do with the alleged unlawful searches and seizures of Mercadez and K.S. Plaintiffs claim that Defendant King once took part in a telephone conference in May 2008, after Mercadez was questioned about smoking marijuana on a field trip, wherein he and Defendant Ray "badgered" Mercadez. (Doc. # 1, ¶ 24). Additionally, Plaintiffs claim that, after K.S.' car was searched, Defendant Ray told him to "come back in to Defendant King's *office*" to discuss the alleged drug paraphernalia found. (Doc. # 1, ¶ 34) (emphasis added). Nothing in the Complaint alleges Defendant King's presence or participation in any unconstitutional conduct. Taken in a light most favorable to Plaintiffs these allegations fail to establish a constitutional violation on the part of Defendant King. Accordingly, Defendant King is qualifiedly immune from Plaintiffs' § 1983 claim against him.

### c.     Defendant Tony Johnson

Plaintiffs fail to state a § 1983 claim of supervisory liability against superintendent Tony Johnson. Plaintiffs do not allege that Defendant Johnson participated in or directed

any of the alleged unlawful searches and seizures.  Construed liberally, Plaintiffs allege Defendant Johnson was aware of Defendant Ray's conduct and acquiesced.  (Doc. # 1, ¶ 25) ("On or about May 16, 2008, Plaintiff Tonya Sims and her husband met with Defendant Johnson who stated that he agreed with the entire course of action the other Defendants were taking.").  Essentially, Plaintiffs claim that Defendant Johnson's failure to take action amounted to deliberate indifference of Mercadez and K.S.' constitutional rights.

As a general rule, the doctrine of *respondeat superior* will not impute liability in § 1983 actions to supervisory personnel absent a showing that the defendant "encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  In other words, a claimed constitutional violation must be based on *active* unconstitutional conduct, and thus, the conduct of one's subordinates is not enough, nor may supervisory liability be based on a mere failure to act. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). In the public school context, supervisory personnel may be subject to liability where evidence establishes they authorized or approved of the unconstitutional conduct of the offending school officials.  *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982).  Here, Plaintiffs fail to allege that Defendant Johnson actively participated in or tacitly encouraged the alleged unconstitutional conduct of Defendant Ray. *See Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976) (complaint failed to state a claim for relief because plaintiff did not allege that the defendants were personally involved or responsible for the alleged deprivation of federal rights); *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983).

The only allegations relative to Defendant Johnson concern a few reported occasions when Plaintiff Tonya Sims–or her husband–met or spoke with Defendant Johnson about the

disciplinary measures taken by Defendants Ray and King after Mercadez and K.S.' various infractions. After Mercadez was reported for smoking marijuana on a school field trip and Defendants Ray and King took disciplinary action, Plaintiff Tonya Sims called Defendant Johnson who stated that he agreed with the course of action taken by his principal and vice principal. This does not constitute an affirmative allegation that Defendant Johnson authorized any unconstitutional conduct of his subordinates. Moreover, because the Complaint fails to allege any unconstitutional conduct on the part of Defendants Ray and King, Defendant Johnson cannot be held liable under a § 1983 theory of supervisory liability when those he was supervising did not violate Plaintiffs' constitutional rights.

Unless the complaint affirmatively pleads personal involvement of a defendant in the unconstitutional conduct, the complaint fails to state a claim and dismissal is warranted. *Bellamy*, 729 F.2d at 421; *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) (district court's 12(b)(6) dismissal of § 1983 claim against supervisors affirmed where plaintiff failed to allege that defendants actively participated in or specifically authorized the alleged unconstitutional conduct). Here, the Complaint not only fails to allege Defendant Johnson's personal involvement in unconstitutional conduct, it fails to allege *any* unconstitutional conduct. Accordingly, Plaintiffs' § 1983 claim against Defendant Johnson is hereby dismissed.

### 2.     Plaintiffs' § 1983 Claim Against the Bracken County School Board

Defendants move to dismiss Plaintiffs' § 1983 claim against the Bracken County Board of Education. The liability of local government entities cannot be premised on a theory of *respondeat superior*. *Doe v. Claiborne County*, 103 F.3d 495, 505-06 (6th Cir. 1996). Therefore, a governmental entity can only be held liable on the basis of its own

conduct. *Id.* at 507. To prevail on a § 1983 claim against a municipality, a plaintiff must establish: (1) that she suffered a deprivation of a constitutionally protected interest; and (2) the alleged deprivation was caused by an official policy, custom, or usage of the municipality.[7] *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Under § 1983, a plaintiff may only hold a governmental entity liable where its official policy or custom was the moving force behind the deprivation of an individual's constitutional rights. *Id.* at 694. A plaintiff may look to the following to establish an illegal policy or custom: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Plaintiffs allege the existence of a "pattern or practice" by the Bracken County Board of Education of illegally searching students:

> Defendants, through their actions and acting under color of law, made a continuing pattern or practice of subjecting M.S. and K.S. to deprivations of their rights...due to their encouraging unreasonable searches and seizures by law enforcement without probable cause. M.S. and K.S. suffered damages as a result of Defendants' conduct.

(Doc. # 1, ¶¶ 43, 44). In essence, Plaintiffs allege municipal liability based on the Board's alleged practice of tacitly approving its employees' unconstitutional conduct.

A municipality, however, only "violates § 1983 where its official policy or custom actually serves to deprive an individual of his or her constitutional rights." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006). Here, as previously discussed, Plaintiffs do

---

[7]The Court's holding indicates that for purposes of a § 1983 cause of action, school boards and municipalities are not to be distinguished. *Monell*, 436 U.S. at 696-99; *see also Williams v. Ellington*, 936 F.2d 881, 884 n.3 (6th Cir. 1991).

not allege any unconstitutional conduct on behalf of the individual defendants. "Because the individual defendants did not violate Plaintiff's constitutional rights, Plaintiff cannot rely on their conduct to establish a claim of municipal liability." *Vereecke v. Huron Sch. Dist.*, 609 F.3d 392, 404 (6th Cir. 2010); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the [municipality's] officer, the fact that the [policy, practice, or custom] might have *authorized* the use of [unconstitutional activity] is quite beside the point.") (emphasis in original); *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) ("In order to prevail on their § 1983 claims against...the [school] Board, they must establish that the [school's] official policy or custom caused the alleged constitutional violation. However, because there is no constitutional violation...no further analysis is warranted."). Plaintiffs fail to state a claim of municipal liability against the Bracken County Board of Education such that dismissal is warranted.

One final matter deserves brief comment. Plaintiffs' in their response make much of the fact that the "issue is hardly the constitutionality of using dogs in the search ... but the stigmatizing manner with which the exercise was conducted against M.S. and K.S." (Doc. # 5, at 9). Contrary to Plaintiffs' assertion, the Bracken County Board of Education and its employees did not carry out it patrols in a stigmatizing manner. The facts, as alleged, reveal that BCHS officials directed the Kentucky State Police to *randomly* patrol classrooms using their trained narcotics dogs to detect controlled substances. The school's randomized drug patrols constitute a facially valid school-wide policy that allows for the search of a student's belongings or person only if reasonable suspicion has first been established. Mercadez and K.S. were only ever "targeted" for further searches and questioning after a KSP dog returned a positive alert on their property or personal items. The positive alerts from the

KSP dogs created reasonable suspicion for school officials to then search the property alerted.

The Complaint itself belies Plaintiffs' assertion that the searches were conducted in a stigmatizing manner. Over the course of two years, Plaintiffs detail a total of three school-wide searches in which Mercadez and K.S.' classrooms were searched. Three searches over a two-year period can hardly be characterized as unlawful harassment. Moreover, Paragraph 15 states that after the KSP dog returned a positive hit on a student's jacket "Defendant Ray asked who it belonged to in a room full of students." (Doc. # 1). Defendant Ray's question illustrates her unbiased duty to keep BCHS students safe. She had no underlying motive to target Mercadez, evidenced by the fact that she did not even know to whom the jacket belonged. She did want to ensure, however, that if the item contained drugs, those drugs were confiscated and kept out of students' reach; a response dictated by her position as principal of BCHS. Frankly, Plaintiffs fail to identify the constitutional underpinnings of their claim concerning this alleged pattern of ongoing harassment and the Court is unwilling to frame Plaintiffs' claims for them. The Fourth Amendment protects against unreasonable searches and seizures, none of which occurred here.

**C.    State Law Claims**

In addition to alleging a federal constitutional injury, Plaintiffs assert a number of claims arising under Kentucky state law. However, it is unnecessary for the Court to address the merits of dismissal with respect to the state law claims. "Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well." *Brooks v.*

*Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384-85 (6th Cir. 2003)) (internal quotations omitted); *see, e.g., Harper v. AutoAlliance Int'l, Inc.,* 392 F.3d 195, 210 (6th Cir. 2004); *Musson Theatrical v. Federal Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.").

Because the Court's jurisdiction over Plaintiffs' state law claims was supplemental under 28 U.S.C. § 1367(c), and Plaintiffs' federal claims have now been dismissed, the Court declines to continue exercising supplemental jurisdiction over the state law claims in this matter. *See* 28 U.S.C. § 1367(c)(3).

### III.    CONCLUSION

Because Defendants Ray and King are entitled to qualified immunity relative to Plaintiffs' § 1983 claim, and because Plaintiffs' claims against Defendants Bracken County Board of Education and Tony Johnson fail as a matter of law, all claims against them shall be dismissed with prejudice. Moreover, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims for negligence and intentional infliction of emotional distress.

For the reasons previously stated, **IT IS ORDERED** that:

(1)    Defendants Bracken County School District, Johnson, Ray, and King's Motion to Dismiss (Doc. # 2) is hereby **GRANTED**;

(2)    Plaintiffs' federal claims are hereby **DISMISSED WITH PREJUDICE**;

(3)    The Court declines to exercise supplemental jurisdiction; therefore, the state-law claims are hereby **DISMISSED WITHOUT PREJUDICE**;

(4)    This case is hereby **STRICKEN** from the active docket of this Court; and

(5)    This is a **FINAL** and **APPEALABLE** Order.

This 18th day October, 2010.



Signed By:
*David L. Bunning*
**United States District Judge**

G:\DATA\Opinions\Covington\10-33 MOO granting MTD.wpd